# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **ISIX IP LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **INTERNATIONAL BUSINESS MACHINES CORPORATION**, <br><br> Defendant. | CIVIL ACTION NO.   6:22-cv-201 <br><br> **JURY TRIAL REQUESTED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Isix IP LLC ("Isix") files this Complaint for Patent Infringement against International Business Machines Corporation (IBM), and states as follows:

1. Plaintiff Isix is a limited liability company organized under the laws of Texas.

2. IBM is a New York corporation with a principal place of business located at 1 New Orchard Road, Armonk, New York, 10504.  IBM may be served through its registered agent in Texas, CT Corporation System, at 1999 Bryan St., Ste. 900, Dallas TX 75201-3136.

## JURISDICTION AND VENUE

3. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4. IBM maintains an office within this District at 11501 Burnet Road, Austin, TX 78758. The IBM Research location in Austin is one of IBM's twelve research laboratories worldwide.

5. IBM has placed infringing products, including IBM Application Integration Suite and IBM Application Integration Suite on Cloud, into the stream of commerce knowing or understanding that such products would be used in the United States, including in the Western District of Texas.

6. Upon information and belief, IBM has used IBM Application Integration Suite in the Western District of Texas, at least through its own use or testing or through demonstrations during sales or installation.

7. Upon information and belief, IBM has sold and offered for sale IBM Application Integration Suite in the Western District of Texas.

8. IBM employees at the International Technical Support Organization, Austin Center, published An Architectural and Practical Guide to IBM Hybrid

Integration Platform, which discusses how to use IBM Application Integration Suite:



https://community.ibm.com/community/user/integration/viewdocument/an-architectural-and-practical-guid?CommunityKey=77544459-9fda-40da-ae0b-fc8c76f0ce18&tab=librarydocuments

9. This Court has personal jurisdiction over IBM at least because IBM is registered to do business in Texas, has one or more places of business within the District, has made, used, offered to sell and sold the accused products within the District thus committing acts of infringement within the District, and placed infringing products including IBM Application Integration Suite into the stream of

commerce knowing or understanding that such products would be used in the United States, including in the Western District of Texas.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant has committed acts of infringement and maintains a regular and established place of business in the district.

## THE '178 PATENT

11. Isix is the owner by assignment of all right, title, and interest in and to United States Patent Number 6,308,178 (the "'178 Patent"), titled "System for Integrating Data Among Heterogenous Systems" including the right to sue for all past infringement.

12. Exhibit A is a true and correct copy of the '178 Patent.

13. The '178 Patent issued from United States Patent and Trademark Office application no. 09/442,089, which was filed on October 21, 1999.

14. The Patent Office issued the '178 Patent on October 23, 2001, after a full and fair examination.

15. The '178 Patent is valid and enforceable.

16. The '178 claims a system for integrating data among heterogeneous systems.  The claimed subject matter generally describes a system having a middleware "integration system" that includes a repository of reusable data elements from which the data elements are activated based upon the source and

destination applications and the desired operations on the data to be exchanged between them. The system is represented architecturally in Fig. 1:



Figure 1: Architectural structure

17. The '178 Patent was successfully commercialized by Isix, a predecessor in interest of the '178 Patent, in the early 2000s. Isix licensed the Isix software to companies in various industries. Isix's deepest market penetration was in the cruise line industry, where most of the major lines were Isix customers. Other clients included ACCO Brands, General Electric, Motorola, and Siemens. *See* https://www.isix.com/isix-clients/. The infringing product from IBM destroyed Isix's market share.

18. Recognizing the market need, the inventors of the subject matter claimed in the '178 Patent conceived and reduced to practice a system that "provides a flexible, end-to-end integration solution that manages all mapping, validation, and synchronization of data among heterogeneous source and destination applications within an organization and among the applications of multiple organizations." '178 at 2:35-40.

19. The inventors recognized that the advantages of using pre-built and reusable components to integrate various applications:

> By providing a standard interface methodology that incorporates a collection of rules describing a particular destination application, the integration system of the present invention eliminates the need for custom software and the disadvantages of the development life cycle associated therewith, reduces user learning curves by virtue of the knowledge contained within the repository, eliminates manual data entry, and provides an upgrade path to future releases of the destination application, thereby reducing the cost of ownership. Updates may be accomplished by revising the repository and adding new modules, and distributing them as replacements to all organizations employing the revised destination application.

'179 Patent at 3:11-23.

20. Claim 1 of the '178 Patent recites:

1. A system for integrating data among heterogeneous source applications and destination applications, comprising:

  a repository of information relating to the source applications and the destination applications, the repository including a plurality of data elements each being capable of performing a discrete operation on a piece of data, and a first module including a plurality of instruction sets, each instruction of each instruction set activating a data element, and

  an active component connected to the repository having an input for loading data from the source applications, and an output for populating the destination applications with processed data, the active component processing the data from the source applications by activating data elements according to the plurality of instruction sets in the module.

21. These technological improvements provide greater cost savings and efficiencies by providing reusable components for integrating applications without the need for specialized computer knowledge.

## THE IBM ACCUSED PRODUCTS

22. IBM sells, offers for sale, makes, uses, and/or imports software and application integration systems that practice the subject matter claimed in the '178 Patent. One such example is the IBM Application Integration Suite, including cloud-based functionality.

23. IBM describes IBM Application Integration Suite as including a "market-leading integration capability that enables real-time and event-driven integration for keeping data across applications synchronized."

24. IBM Application Integration Suite includes:

- Ready-to-use connectors;

- Pre-built integration templates; and

- Patterns that accelerate and simplify the creation of integrations.

> Application Integration Suite includes a market-leading integration capability that enables real-time and event-driven integration for keeping data across applications synchronized. It includes:
>
> - Ready-to-use connectors
> - Pre-built integration templates
> - Patterns that accelerate and simplify the creation of integrations.
>
> This integration solution identifies events that occur in a wide range of enterprise systems and Cloud Service applications. It transforms and routes them to their intended destination systems or applications. This improves visibility of business data, events, and messages that flow through the integration layer to allow for faster responses to changing business needs and to improve the ability to make smarter business decisions.

https://www-01.ibm.com/common/ssi/cgi-bin/ssialias?htmlfid=897/ENUS217-058&infotype=AN&subtype=CA.

25.     In its own words, IBM Application Integration Suite is an "integration solution [that] identifies events that occur in a wide range of enterprise systems and Cloud Service applications. It transforms and routes them to their intended destination systems or applications. This improves visibility of business data, events, and messages that flow through the integration layer to allow for faster responses to changing business needs and to improve the ability to make smarter

business decisions." https://www-01.ibm.com/common/ssi/cgi-bin/ssialias?htmlfid=897/ENUS217-058&infotype=AN&subtype=CA

26.  IBM publishes the figure below at right describing IBM Application Integration Suite:



Fig. 2 a block diagram of the integration system of FIG. 1.

27.  IBM Application Integration Suite includes each element of the '178 Patent claims including (i) an active component, IBM App Connect ("the application integration capability within the IBM Cloud Integration platform"); (ii) a repository of information; (iii) a module including instruction sets (IBM templates "cover[] a range of cognitive, marketing, sales, support, business ops, e-commerce, and finance use cases"); and (iv) a library of data elements (re-usable units of code) and IBM business logic called from message flows.

28. IBM Application Integration meets each and every limitation of at least one claim of the '178 Patent.

## COUNT I – DIRECT PATENT INFRINGEMENT OF THE '178 PATENT BY IBM

29. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

30. IBM has directly infringed the '178 Patent in violation of 35 U.S.C. § 271(a) by (1) making and selling IBM Application Integration Suite (an "Accused Product") which embodies the patented inventions of at least claim 1 of the '178 Patent, and (2) using, or putting into service, including through its own use, testing, and demonstration IBM Application Integration Suite, which embodies the patented inventions of at least claim 1 of the '178 Patent, by operating IBM Application Integration Suite when all elements of such system are combined as described above, thus meeting each limitation of at least claim 1 of the '178 Patent.

31. IBM's infringing Accused Products include, without limitation, IBM Application Integration Suite, and other middleware application and data integration systems with the same or similar features and functionality that satisfy each element of one or more asserted claims.

32. The Accused Products, when combined and used as described above, satisfy each and every element of each asserted claim of the '178 Patent either literally or under the doctrine of equivalents.

33. IBM's infringing activities are and have been without authority or license under the '178 Patent.

34. Plaintiff is entitled to recover from IBM the damages sustained by Plaintiff as a result of IBM's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## NOTICE

35. Plaintiff notified IBM of its infringement in 2020.

## JURY DEMAND

36. Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court find in their favor and against Defendant, and that the Court grant Plaintiffs the following relief:

A.  An adjudication that one or more claims of the '178 Patent has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B.  An accounting and an award to Plaintiffs of damages adequate to compensate Plaintiffs for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

C.  That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

D.  Any further relief that this Court deems just and proper.

Respectfully submitted this 25th day of February, 2022.

                                          By: */s/ Cabrach J. Connor*
                                          Cabrach J. Connor
                                          Texas Bar No. 24036390
                                          cab@clands.com
                                          John M. Shumaker
                                          Texas Bar No. 24033069
                                          john@clands.com
                                          **CONNOR LEE & SHUMAKER PLLC**
                                          609 Castle Ridge Road, Suite 450
                                          Austin, TX 78746
                                          P: (512) 777.1254
                                          F: (888) 387.1134

David A. Skeels
Texas Bar No. 24041925
dskeels@whitakerchalk.com
**WHITAKER CHALK SWINDLE AND SCHWARTZ, PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
P:  (817) 878-0500

**ATTORNEYS FOR ISIX IP LLC**